UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JOAN SECURE, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

ULTIMATE FITNESS GROUP, LLC d/b/a
ORANGETHEORY FITNESS, a Florida
limited liability company,

        Defendant.

Case No.  1:18-cv-20483-FAM

**DEFENDANT ULTIMATE FITNESS GROUP, LLC, D/B/A
ORANGETHEORY FITNESS'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

Defendant ULTIMATE FITNESS GROUP, LLC, d/b/a ORANGETHEORY FITNESS

("Orangetheory"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil

Procedure 12(b)(6), hereby moves to dismiss Plaintiff JOAN SECURE'S ("Plaintiff") First

Amended Class Action Complaint ("FAC"), as follows:

## I.    INTRODUCTION

Plaintiff brings the instant putative class action against Orangetheory based on the

allegation that she received two text messages sent through an automatic telephone dialing

system ("ATDS") without prior express written consent in violation of the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227.  Following Orangetheory's first motion to dismiss,

Plaintiff elected to amend her complaint in an effort to cure that complaint's legal deficiencies.

Plaintiff's FAC, however, contains no new facts and instead offers only conclusory and

unsupported assertions about the same facts contained in the original complaint.  Accordingly,

Plaintiff's FAC fails to establish a viable TCPA claim for the same reasons as her original complaint and should be dismissed.

First, Plaintiff does not adequately allege that the at-issue text messages were sent using an ATDS.  Instead, Plaintiff offers only the conclusory assertion that an ATDS was used which is insufficient, particularly in light of the facts contained in the Complaint that indicate no automated system was used.  The two text messages Plaintiff allegedly received, as described in the FAC, do not exhibit the signs of being transmitted through an ATDS and instead contain hallmarks of transmission via regular human interaction:  The text messages were sent from a local telephone number rather than an SMS short code, were sent three months apart rather than repeatedly *en masse*, and gave no automated response to Plaintiff's request that the messages stop.

Second, Plaintiff fails to adequately plead the alleged text messages constitute advertising, meaning even if an ATDS was used, no written consent was required.  The first text message Plaintiff received asked for referrals, while the second informed Plaintiff about a charity walk to fight breast cancer.  Accordingly, the text messages fall outside the definition of advertising under the TCPA and do not require written consent.  Because Plaintiff never alleges that she did not provide a non-written form of consent, she has not pled all the necessary elements of her claim.

For each of these independent reasons, Orangetheory did not violate the TCPA and Plaintiff's FAC is legally infirm, warranting dismissal.

2

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff, who was apparently a member at an Orangetheory fitness studio, alleges Orangetheory "caused" the following text messages to be transmitted to her cellular telephone number:



(FAC, ¶ 25).

Plaintiff further alleges that the "text messages originated from telephone number 305-570-2940, a number which is owned and operated by Defendant, and is answered by a

3

prerecorded message – not a live operator – instructing the caller to contact 305-234-1141, another number owned and operated by Defendant." (FAC, ¶ 30).[1]  Plaintiff alleges that "[a]t no point in time did Plaintiff provide Defendant with her express written consent to be contacted by text messages using an ATDS." (FAC, ¶ 33).  Plaintiff then argues that Orangetheory "utilized an ATDS to transmit the messages." (FAC, ¶ 36).  Plaintiff, however, admits in the FAC that the text messages here were sent from a normal telephone number, not a short code.  (FAC, ¶ 30).  Plaintiff also alleges that "[a]t no point in time did Plaintiff provide Defendant with her express written consent to be contacted by text messages using an ATDS." (FAC, ¶ 34).  Tellingly, Plaintiff offers no further explanation, nor does she allege she never provided her telephone number to Orangetheory or an Orangetheory franchisee.

Based upon these meager allegations, Plaintiff brings a single count for violation of the TCPA and seeks to represent the following class:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent.

(FAC, ¶¶ 42, 52–58).

## III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to state a cognizable legal theory or allege enough plausible facts to support the claim stated.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] Although Orangetheory recognizes it must accept Plaintiff's allegations as true for purposes of this motion, Orangetheory denies it sent these text messages to Plaintiff.  Instead, the messages appear to have been sent by an independently owned and operated franchisee.  In addition, the telephone numbers referenced in the Complaint do not belong to Orangetheory.

EAST\153219755.2

662, 678 (2009). If the "complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotations omitted). "[T]he pleading standard [of] Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true." *Leonard v. Zwicker & Associates, P.C.*, No. 16-CV-14326, 2016 WL 7388645, *2 (S.D. Fla. Dec. 14, 2016). "However, pleadings that 'are no more than conclusions, are not entitled to the assumption of truth.' [Legal conclusions] must be supported by factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Moreover, a court's "duty to accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

## IV.   THE COURT SHOULD DISMISS THE FAC BECAUSE PLAINTIFF FAILS TO STATE A CLAIM.

The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A). Therefore, to state a claim under the TCPA, a plaintiff must allege that (1) the defendant made a call to a cell phone, (2) by the use of an automatic dialing system or an artificial or recorded voice, and (3) without prior express consent of the called party. *See Cummings v. Rushmore Loan Management Service*,

2017 WL 4005455, *2 (M.D. Fla. Sep. 12, 2017).  Text messages are treated as calls under the TCPA.  *See Murphy v. DCI Biologics Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, *4, n.4 (M.D. Fla. Dec. 31, 2013).

Here, Plaintiff's FAC fails for two independent reasons.  First, Plaintiff does not allege enough facts to plausibly plead that an ATDS was used.  Second, Plaintiff does not sufficiently allege that the text messages constituted advertising, requiring written consent.  Accordingly, the Court should dismiss Plaintiff's FAC.

### A.     Plaintiff Fails To Allege Facts Establishing That The Texts Were Sent Using An ATDS.

If a text message is not sent via an ATDS, it falls outside the scope of the TCPA altogether.  *See* 47 U.S.C. § 227(b)(1); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014) ("If Defendant's system is not an ATDS, [t]he TCPA does not apply[.]").  The TCPA expressly defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."   47 U.S.C. § 227(a)(1).  In 2015, the FCC attempted to broaden the definition of ATDS, but the FCC's Order was overturned.  *See ACA International v. Federal Communications Commission*, --- F.3d ---, 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) ("*ACA International*").  After the *ACA International* decision, courts should "not stray from the statute's language," which requires that the equipment have the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. *Marshall v. CBE Group, Inc.*, 2018 WL 1567852, *5 (D. Nev. Mar. 30, 2018).

To allege adequately that calls were made using an ATDS, a complaint must do more than parrot the statutory language.  Plaintiff's "formulaic recitation of the elements" of his claim will not do.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  When analyzing whether a

6

plaintiff has sufficiently alleged the use of an ATDS, courts examine the facts and circumstances of the alleged calls to determine whether they create an "inference supporting the allegation that calls were made using an automatic dialing system[.]" *Hunter v. Diversified Consultants, Inc.*, No. 8:14-CV-2198-T-30, 2014 WL 6747153, *1 (M.D. Fla. Nov. 26, 2014) (dismissing TCPA complaint because it lacked adequate factual support).  Merely setting forth the statutory language of  the TCPA is a "copy and paste job [] not entitled to the assumption of truth." *Walker v. Commercial Industries Service Company, Inc.*, No. 13-61096-CIV, 2013 WL 12043500, *2 (S.D. Fla. Oct. 1, 2013).

Here, the only allegations Plaintiff provides that support the inference that an ATDS was used are conclusory assertions lifted directly from the TCPA's statutory text.  (*Compare* Complaint ¶¶ 39, 55) ("The equipment utilized by Defendant has the capacity store [sic] telephone numbers using a random or sequential generator, or to dial such numbers."), *with* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity--  to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.").

Beyond these threadbare recitals of the statutory text, Plaintiff offers only two additional facts regarding the text messages, both of which rebut Plaintiff's claims and support the inference that no ATDS was used: (1) the Complaint states the dates and content of the text messages (FAC, ¶ 25); and (2) it lists the phone number from which the text messages were sent. (FAC, ¶ 30).[2]  These additional pieces of information contained in the FAC indicate that the text messages were sent through normal human interaction and that an ATDS was not used.

---

[2] As discussed further below, the FAC offers assertions about what these facts mean, but no additional facts to support these conclusory statements.

First, Plaintiff sets forth the dates and verbatim content of the text messages in Paragraph 25 of the FAC.  The first text message, which asked Plaintiff for referrals, was sent on May 5, 2017.  The second text message, informing Plaintiff about a breast cancer charity walk, was sent on August 29, 2017.

To determine whether a plaintiff has sufficiently pleaded the use of an ATDS, courts examine the content of the text messages at issue and whether they are identical, indicating the use of an ATDS, or have differences, making it appear that they were not sent by an ATDS.  *See, e.g.*, *Friedman v. Massage Envy Franchising*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, *2 (S.D. Cal. Jun. 13, 2013) (dismissing TCPA complaint because plaintiffs failed to adequately allege use of an ATDS and stating "The text messages are generic and impersonal, as Plaintiffs assert, but that is not enough to make the claims plausible…. The text messages that the Plaintiffs present are similar in content, but differ enough to make it appear as if an ATDS was not utilized."); *Murphy*, 2013 WL 6865772, at *2–4 (plaintiff alleged that "identical text messages were also sent out *en masse* to other donors using automatic telephone dialing systems" so plaintiff stated TCPA claim); *Duguid v. Facebook, Inc.*, 2016 WL 116365. *5 (N.D. Cal. Mar. 24, 2016) (finding that content of messages indicated that they were targeted and not sent *en masse* by an ATDS); *Weisberg v. Stripe, Inc.*, 2016 WL 3971296, *4 (N.D. Cal. July 25, 2016) (dismissing complaint because content of text messages suggested individual targeting rather than use of ATDS).

Here, the dates and content of the messages indicate they were not sent using ATDS.  The first text message sent to Plaintiff on May 5, 2017, asked Plaintiff to refer other persons to Orangetheory.  (FAC, ¶ 25).  The second text message, sent more than three months later, on August 29, 2017, informed Plaintiff about a charity breast cancer walk.  *Id.*  Several aspects of

8

these messages indicate no ATDS was used.  First, Plaintiff received only two messages, more than three months apart, indicating the absence of an automated program that sent out messages at the same time every week or more.  Second, the messages differed.  Although somewhat impersonal,[3] the two messages were about totally different topics and did not follow the same format.  For example, the first message stated that Plaintiff could respond if she did not want to receive further text messages, but the second message contained no such information, demonstrating the messages were not sent through a system that generated boilerplate instructions.  Third and finally, when Plaintiff replied "Stop" in response to the second message, there was no telltale automated acknowledgement of Plaintiff's reply, further indicating no ATDS was used.

The second fact Plaintiff provides likewise rebuts her conclusory assertion that an ATDS was utilized.  In Paragraph 30 of the FAC, Plaintiff alleges that the texts "originated from telephone number 305-570-2940, a number which is owned and operated by Defendant, and is answered by a prerecorded message – not a live operator – instructing the caller to contact 305-234-1141, another number owned and operated by Defendant."  Plaintiff thus admits that the text message did not originate from an SMS short code—*i.e.*, a series of five or six numbers that do not resemble a traditional ten-digit telephone number—which are used by automated systems to send text messages.  Courts find that when a text message comes from an SMS short code, it is an indication the messages were sent by an ATDS.  *See, e.g.*, *Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593, *4 (S.D. Fla. Nov. 10, 2015) ("text messages . . . were

---

[3] Plaintiff asserts the messages are impersonal because "the May 5th text message requests Plaintiff to respond by providing her name and phone number, establishing that the message was not personalized, but rather automated."  (FAC, ¶ 37).  Plaintiff blatantly mischaracterizes the message, which is set forth verbatim in the FAC.  The message actually asks for referrals and states "[j]ust reply to this message with name(s) and phone number(s)" of the referrals—nowhere does it request Plaintiff to respond with her name and phone number.  (FAC, ¶ 25).

9

sent 'en mass' from a short code"); *Duguid v. Facebook, Inc.*, No. 3:12-CV-02962-L-RBB, 2016 WL 1169365, *1 (N.D. Cal. Mar. 24, 2016) (noting that "messages were sent from an SMS short code, 326-65 ('FBOOK')"). Indeed, three of the cases Plaintiff cited in her original complaint, *see* Dkt. No. 1 ¶ 31, to support her conclusory ATDS assertion specifically relied on the fact that the messages were sent using SMS short code.[4] Here, however, the text messages came from an actual telephone number, not an SMS short code, meaning Plaintiff's second additional allegation about the facts and circumstances of the messages supports the inference that *no* ATDS was used.

In an attempt to evade the fact that the text messages were sent from a standard telephone number, plaintiff, without support, claims the normal ten-digit telephone number used was something called a "long code"—a term plaintiff apparently invents to make the number seem similar to the short codes discussed in the cases cited above. (FAC, ¶ 31). Despite offering a description of what a "long code" supposedly is, Plaintiff offers no facts suggesting that the standard telephone number used was indeed such a "long-code," indicating the ten-digit number was exactly what it appears—a standard telephone number.

Plaintiff fails to allege in her FAC *facts* creating a plausible inference that Orangetheory used an ATDS to send text messages. Indeed, Plaintiff's alleged facts, including the over three-month gap between the two differing texts, the absence of an automated response to Plaintiff's "Stop" request, and the phone number used to send the texts, create the opposite inference: that the texts were *not* sent using an ATDS. Plaintiff accordingly fails to state a claim for violation of the TCPA, and the Court should dismiss the FAC.

---

[4] Apparently realizing on-point case law does not support her claims, Plaintiff has deleted these case citations from the FAC.

**B.     Plaintiff Fails To Allege That The Calls Were Made Without the Requisite Consent.**

Plaintiff alleges that "At no point in time did Plaintiff provide Defendant with her express written consent to be contacted by text messages using an ATDS." (FAC, ¶ 34).   Likewise, the putative class alleged by Plaintiff includes only persons sent text messages "without the recipients' prior express written consent." (FAC, ¶ 42).  Plaintiff, however, fails to make any allegation, even in conclusory form, that she did not provide her telephone number to Orangetheory or provide oral consent to receive text messages.  Plaintiff's omission on this point is salient.

Prior express *written* consent is required only if a text message constitutes advertising or telemarketing, meaning non-written forms of consent are permissible if the message does not fall within these definitions.  *See* 47 C.F.R. § 64.1200(a)(2).  Accordingly, if the text messages do not constitute advertising, written consent is not required, and Plaintiff, by failing to allege that she never provided her telephone number to Orangetheory, has failed to state a viable TCPA claim. [5]

"The term *advertisement* means any material advertising the commercial availability or quality of any property, goods, or services."   47  C.F.R.  §  64.1200(f)(1).   "The term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is

---

[5] If the text message does not constitute advertising or telemarketing, only prior express consent if required.  *See* 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1).  The provision of a telephone number to a person provides prior express consent to be called.  *See, e.g.*, *Murphy* 2013 WL 6865772, at *8 ("The 1992 FCC Order is clear that providing a number constitutes express consent to be auto-dialed under the TCPA."); *Van Patten v. Vertical Fitness Group, LLC*, 22 F.Supp.2d 1069, 1078 (S.D. Cal. 2014) (holding that gym member consented to receiving text messages when he provided his telephone number upon joining gym).

11

transmitted to any person."  47 C.F.R. § 64.1200(f)(12).  Neither of the at-issue text messages constitutes advertising or telemarketing.

The first text asked Plaintiff to provide referrals to Orangetheory.  (FAC, ¶ 25).  The message did not attempt to sell Plaintiff anything or encourage the purchase of goods or services, and therefore falls outside the advertising and telemarketing definitions.  *See, e.g.*, *Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1096–97 (N.D. Cal. 2015) (holding that text messages aimed at recruiting individuals are not advertising, "even if Uber's ability to successfully recruit drivers is related to its commercial interest," and collecting cases holding the same); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG BGS, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) (holding messages "inviting Plaintiff to attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them" not telemarketing because "Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transactions with Defendant to purchase its goods").[6]

The second text message informed Plaintiff about a "Making Strides Against Breast Cancer Walk" and asked her to join the walk or donate.  (FAC, ¶ 25).  Likewise, this text was not attempting to sell anything to Plaintiff or encourage her to purchase goods or services.  Plaintiff claims otherwise by misconstruing the message and claiming it made a broad request for Plaintiff to "'[j]oin [Defendant's] team.'"  (FAC, ¶ 29).  However, the message in no way implied Plaintiff should join Orangetheory in a commercial sense and only offered Plaintiff the

---

[6] The FAC claims this recruiting message was marketing goods or services because it offered free sessions. (FAC, ¶ 27). Not so. *Friedman* specifically addressed this issue, and, applying the FCC's broadcaster regulations to the TCPA context, stated "The 2005 Rules and Regulations distinguish between messages that encourage consumers to listen to free broadcasts and messages that encourage consumers to listen to programming for which they must pay. The latter constitutes unsolicited advertisements, whereas the former does not." *Friedman*, 2013 WL 1629084, at *4 (internal citations omitted).

opportunity to take part in a charity event in multiple ways—either by attending or donating. The message accordingly is not advertising or telemarketing. *See Murphy*, 2013 WL 6865772, at \*10 (holding messages encouraging blood donation not telemarketing "[b]ecause neither of the messages in this case encouraged Murphy to purchase, rent, or invest in anything").[7]

Because neither text message constitutes advertising or telemarketing, prior express *written* consent was not required to send the messages. Plaintiff fails to allege that she did not provide her cellular telephone number to Orangetheory, meaning Plaintiff has not alleged facts showing the texts were sent without prior express consent. Plaintiff thus does not plead facts showing the lack of the required consent and the Court should dismiss her Complaint.

## V.   CONCLUSION

Plaintiff has not alleged facts from which the Court can draw a reasonable inference that Orangetheory used an ATDS to send the two text messages to Plaintiff. Nor has Plaintiff alleged facts establishing that prior express written consent was required to send the texts. The Court should therefore grant the motion and dismiss the FAC. Because Plaintiff has already had an opportunity to amend her complaint, the dismissal should be without leave to amend.

---

[7] Plaintiff makes the unsupported assertion that "the ultimate purpose of the text message was to establish a relationship with Plaintiff and sell her Defendant's goods and services" and cites *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239 (S.D. Fla. 2017). In addition to Plaintiff's assertion being conclusory and unsupported by pleaded facts, *Comprehensive Health Care* is not on point. *Comprehensive Health Care* dealt with faxes aimed at getting medical professionals to submit information so they could be spammed with marketing materials, not text messages providing information about charity events. *See Comprehensive Health Care,*, 232 F. Supp. 3d at 1242.

EAST\153219755.2

Dated:     April 23, 2018              Respectfully submitted,


                                       /s/  J. Trumon Phillips
                                       Fredrick H.L. McClure
                                       Florida Bar No. 147354
                                       J. Trumon Phillips
                                       Florida Bar No. 84568
                                       **DLA PIPER LLP (US)**
                                       3111 W. Dr. Martin Luther King Jr. Blvd.
                                       Suite 300
                                       Tampa, Florida 33607-6233
                                       Phone:  813-229-2111
                                       Fax:  813-229-1447
                                       Email:  fredrick.mcclure@dlapiper.com
                                              trumon.phillips@dlapiper.com
                                              sheila.hall@dlapiper.com
                                       Attorneys for Defendant
                                       Ultimate Fitness Group, LLC
                                       d/b/a Orangetheory Fitness

## CERTIFICATE OF SERVICE

        **I HEREBY CERTIFY** that on April 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to the following counsel of record:

Manuel S. Hiraldo
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL  33301
Phone: 954-400-4713
Email:  mhiraldo@hiraldolaw.com
Attorney for Plaintiff


                                       s/ J. Trumon Phillips
                                       Attorney


                                       14