UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-cv-20483-FAM

JOAN SECURE,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

ULTIMATE FITNESS GROUP, LLC
d/b/a ORANGETHEORY FITNESS,
a Florida limited liability company,

        Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

    Plaintiff Joan Secure responds in opposition to Defendant Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness's Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6), [ECF No. 18], and states as follows:

**I.    INTRODUCTION**

    In 2017, the Federal Trade Commission ("FTC") received 7,157,370 consumer complaints regarding unsolicited "robocalls," an increase of almost 2 million from the prior year.[1] Despite efforts by the FTC, the Federal Communications Commission ("FCC"), and even telephone carriers, unscrupulous companies continue to violate the Telephone Consumer Protection Act ("TCPA") because they are simply unable to resist the temptation of exploiting a direct line of communication to new customers.

---

[1] *See* Federal Trade Commission, https://www.ftc.gov/policy/reports/policy-reports/commission-staff-reports/national-do-not-call-registry-data-book-fy-2; (last visited on May 7, 2018).

Such was the case here. Defendant, an owner operator of fitness clubs, sent Plaintiff and the putative class members automated text messages to promote its clubs and services. Defendant sent these messages to consumers like Plaintiff who had <u>not</u> provided their express written consent to receive marketing calls. Defendant, for its part, does not deny that it sent text messages to Plaintiff and members of the putative class using an automatic telephone dialing system ("ATDS"). Nor does Defendant deny that the ultimate purposes of these calls was to promote its fitness clubs. Rather, Defendant's carefully crafted Motion to Dismiss dances around these issues while simultaneously claiming that Plaintiff has not sufficiently alleged a cause of action under the TCPA.

First, Defendant contends that Plaintiff has not alleged the use of an ATDS. In doing so, Defendant advances an unattainable pleading standard that simply does not exist. According to Defendant, nothing short of pleading the source code and specific type of equipment used would do. Notwithstanding Defendant's efforts to convince this Court otherwise, Plaintiff has more than met her burden to allege the use of an ATDS. Plaintiff has alleged (1) the transmission of impersonal and generic text messages, which include the instruction "**reply STOP**," a hallmark of automated messages; (2) that the number used to transmit the messages is not operated by a live agent, but rather an automated answering system; (3) the use of a "long code" to transmit the messages, which permits Defendant to transmit mass text messages while deceiving consumers into believing that the messages were personalized and sent by a human; and (4) the specific functionalities of the equipment used by Defendant, including the capacity to store numbers using a random or sequential generator, and to dial such numbers, as well as the capacity to dial numbers automatically from a list of numbers. *See* Am. Comp. at ¶¶ 25, 30-32, and 36-39, [ECF No. 13]. At this stage in the litigation, Plaintiff cannot be expected to provide any more facts, and has sufficiently met her burden.

Second, Defendant claims that it was not engaged in telemarketing by transmitting the text messages at issue and, therefore, was not required to secure Plaintiff's and the class members' express written consent. Defendant again attempts to bend the applicable standard for its benefit. According to Defendant, the texts were not marketing because they did not explicitly market Defendant's fitness facilities. However, the "FCC contemplates that savvy companies may devise a multilayered approach in attempting to avoid violating the TCPA, and acknowledges that an otherwise benign [text] may violate the TCPA, if it ultimately leads to the promotion of goods or services." *Comp. Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239 (S.D. Fla. 2017) (Bloom, J.). This is precisely what occurred here. Defendant's text messages were sent for the ultimate purpose promoting its fitness facilities – an allegation it does not deny – and thus required it to secure express written consent. In sum, Defendant's Motion to Dismiss should be denied and this case permitted to proceed on the merits.

## II.  LEGAL STANDARD

"A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case." *Spector v. Generac Power Sys., Inc.*, No. 10 14182-CIV-MOORE/SIMONTON, 2010 WL 11444279, at *1 (S.D. Fla. Oct. 5, 2010). "When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true." *Prisua Eng'g Corp. v. Samsung Elecs. Co., Ltd.*, No. 1:16-cv-21761-KMM, 2017 WL 1041571, at *3 (S.D. Fla. Mar. 9, 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Accordingly, a court may dismiss a complaint only "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Id*.

### III.   MEMORANDUM OF LAW

Plaintiff has sufficiently alleged the use of an ATDS by Defendant.  The use of an ATDS is clearly evident from, among other things, the text messages themselves, which are impersonal and end with the word "Stop," a hallmark of automated text messaging.  These indirect allegations must be accepted as true for purposes of Defendant's motion, and are sufficient at this stage in the litigation to plead the use of an ATDS.  Additionally, the text messages sent by Defendant were indirect marketing that required express written consent, which Defendant does not deny it failed to acquire.

#### A.   **Defendant Violated the TCPA Using an ATDS**.

Defendant's argument that Plaintiff has not plausibly alleged the use of an ATDS is unpersuasive and would have this Court adopt an unattainable self-serving pleading standard.  A plaintiff alleging a claim under the TCPA sufficiently alleges the use of an ATDS by relying on indirect allegations and identifying the "circumstances surrounding the [calls]" that "create a plausible inference of autodialing," including: "their commercial, impersonal content;" that the identical calls were sent to multiple recipients; that they were sent without the recipients' consent; and that they were sent from a telephone number likely not associated with a cellular telephone.  *See Keim v. ADF Midatlantic, Ltd. Liab. Co.*, No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070, at *12 (S.D. Fla. Nov. 9, 2015) ("Together, these allegations are more than sufficient to plead the autodialer element of Keim's TCPA claim."); *see also Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017) ("'Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more.'") (quoting *Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG (NLS), 2013 U.S. Dist. LEXIS 72725, 2013 WL

2252646, at *3 (S.D. Cal. May 22, 2013)); *Cummings v. Rushmore Loan Mgmt. Serv.*, No. 8:17-cv-1652-T-33MAP, 2017 U.S. Dist. LEXIS 177619 (M.D. Fla. Oct. 26, 2017) ("[W]ell-pled allegations of an ATDS rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used.") (quoting *Owens-Benniefield v. Nationstar Mortg. LLC*, No. 8:17-cv-540-T-33TGW, 258 F. Supp. 3d 1300, 2017 U.S. Dist. LEXIS 92007, 2017 WL 2600866 (M.D. Fla. June 15, 2017)(quoting *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111, 1114 (W.D. Wash. 2013)).

Here, to support her contention that Defendant used an ATDS to transmit the violative calls, Plaintiff makes specific allegations, including (1) that the impersonal and generic text messages included the instruction "reply STOP," a hallmark of automated messages as no individual would send a message ending with a "stop" instruction; (2) that the number used to transmit the messages is not operated by a live agent, but rather an automated answering system; (3) the use of a "long code" to transmit the messages, which permits Defendant to transmit mass text messages while deceiving consumers into believing that the messages were personalized and sent by a human; and (4) the specific functionalities of the equipment used by Defendant, including the capacity to store numbers using a random or sequential generator, and to dial such numbers, as well as the capacity to dial numbers automatically from a list of numbers.  *See* Am. Comp. at ¶¶ 25, 30-32, and 36-39.

These facts are more than sufficient at this stage of the litigation for Plaintiff "to meet [her] 'obligation to provide the grounds of [her] entitlement to relief, and provide sufficient notice to Defendant to answer the complaint.'" *Scott*, 2017 U.S. Dist. LEXIS 207513, at *17-18 (citing *Buslepp v. Improv Miami, Inc.*, No. 12-60171-CIV, 2012 U.S. Dist. LEXIS 62489 (S.D. Fla. May  4, 2012) (finding that Plaintiff that alleged the date and content of the text message, and that  numerous other persons received the same text to their cell phones, was sufficient to state a claim  for relief under

5

TCPA)).  Prior to the initiation of discovery, more cannot be expected of Plaintiff, and she has sufficiently met her burden at this stage of the litigation.

The cases on which Defendant relies are readily distinguishable.  The plaintiffs in those cases had not made the specific factual allegations found here.  According to Defendant, Plaintiff's allegations regarding the capabilities of the equipment it used to harass Plaintiff – including the capacity to store or produce  numbers using a random or sequential generator, and to dial those numbers – are not enough.  Nothing short of alleging the source code for the platform used to contact Plaintiff would appear to satisfy Defendant.  Of course, Defendant's self-serving heightened pleading requirement is not standard.

Lastly, Defendant misinterprets the holding and ultimate impact of *ACA Int'l v. FCC*, 885  F.3d 687 (D.C. Cir. 2018) ("ACA").  First, the out-of-circuit *ACA* decision is not binding on this Court and the 2015 TCPA Order remains binding.  *See Fridman v. The Collection, LLC*, Case No. 18-cv-20348-UU at ECF No. 24 (S.D. Fla. Mar. 27, 2018) (holding that ACA "is not binding authority") (emphasis added).  Second, the holding of *ACA* does not mean that only equipment that generates random or sequential numbers that are then dialed can be considered an ATDS.  At the most basic level, this is not a requirement under the statute, which also contemplates equipment that "stores or produce telephone numbers to be called, using a random or sequential number generator…"  47 U.S.C. § 227(a)(1)(A) (emphasis supplied).  Defendant cannot simply read the word "store" out of the statute.  But more importantly, Plaintiff's allegations regarding Defendant's equipment's capacity to automatically dial a large volume of numbers are sufficient to plead the use of an ATDS because the impact of ACA (even if it is governing) is that the FCC's 2003 TCPA Order remains binding.

The D.C. Circuit's holding in *ACA* was based on the FCC's 2015 TCPA Order's internal conflict which "indicates in certain places that a device must be able to generate and dial random  or sequential numbers to meet the TCPA's definition of an autodialer, [while] also suggest[ing] a

6

competing view: that equipment can meet the statutory definition even if it lacks that capacity." *ACA Int'l*, 885 F.3d at 702. The 2003 TCPA Order did not contain this conflict: "the Commission had made clear that, while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *Id*. (citing 2003 Order, 18 FCC Rcd. at 14091 ¶ 131 n.432); *see also Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1374 (S.D. Fla. 2014) (noting that the 2003 Order that equipment may qualify as an ATDS even if it does not have the capacity to generate random or sequential numbers).

The D.C. Circuit's invalidation of the 2015 TCPA Order did not hold that that 2003 TCPA Order's interpretation was impermissible, it simply held that the 2015 TCPA Order's conflicting answer to the question offered no meaningful guidance:

> The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). ***It might be permissible for the Commission to adopt either interpretation***. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

*ACA Int'l*, 885 F.3d at 702-3 (emphasis added).

Under the 2003 TCPA Order, "equipment [] qualif[ies] as an ATDS if it can dial numbers automatically, for example by calling or sending text messages to numbers in a pre-programmed list, irrespective of the presence of a random or sequential number generator." *Legg,* 20 F. Supp. 3d at 1375 (emphasis supplied) (citing *Lardner v. Diversified Consultants, Inc.*, No. 13-22751, 17 F. Supp. 3d 1215, 2014 U.S. Dist. LEXIS 64205 at *15-16 (S.D. Fla. Apr. 30, 2014) (citing 2003 FCC Order to determine that "systems that automatically dial cell phone numbers from a preprogrammed list" fall within ATDS definition); *Fields v. Mobile Messengers Am., Inc.*, No. 1205160, 2013 U.S. Dist. LEXIS 180227 at *9-12 (N.D. Cal. Dec. 23, 2013) (citing 2003 FCC Order and finding that evidence of text messages sent without human intervention was sufficient to preclude summary judgment on whether

ATDS was used); *Hickey v. Voxernet, LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012) (citing 2003 FCC Order to find that plaintiff sufficiently pled use of ATDS where he alleged facts suggesting automated transmission of text messages); *Rivas v. Receivables Performance Mgmt., LLC*, No. 08-61312, 2009 U.S. Dist. LEXIS 129378 at *12-13 (S.D. Fla. Sept. 1, 2009) (plaintiff created issue of fact on use of ATDS precluding summary judgment where evidence suggested "computer device that dialed Plaintiff's number without human intervention")). Therefore, Plaintiff's allegation – that the equipment used by Defendant has the capacity to dial telephone numbers from a list of numbers automatically – is sufficient to plausibly allege the use of an ATDS as defined by the FCC's 2003 TCPA Order.

### B. Defendant's Text Messages were Dual Purpose and Required Plaintiff's Express <u>*Written*</u> Consent.

In 2003, the FCC, which is tasked with implementing regulations for the TCPA, issued a rule regarding "dual purpose" calls:

> The so-called "dual purpose" calls described in the record--calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers--would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the 2002 Notice that **such messages may inquire about a customer's satisfaction with a product already purchased**, **but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement**.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14098 ¶ 142 (July 3, 2003) (emphasis added). In other words, "the FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational

8

component as well as a marketing component, are prohibited." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012) (citing *2003 Report and Order* at 14097-98 ¶¶ 140-142).

In applying the dual purpose rule, courts must focus "not on the caller's characterization of the call, but on the purpose of the message." *Id*. Courts should approach the analysis "with a measure of common sense," keeping in mind that "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context," and that "[a]ny additional information provided in the calls does not inoculate them." *Chesbro, L.P.*, 705 F.3d at 918. Further, under the FCC's regulations, "telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Chesbro*, 697 F.3d at 1234 (quoting 47 C.F.R. § 64.1200(f)(10) (2011)).

Consistent with these rules and regulations, courts evaluating calls that contain an indirect or future marketing component have found them to be dual purpose calls for which express written consent is required. For example, in *Chesbro*, the defendant called the plaintiff with a prerecorded message to inform him that his "Best Buy Reward Zone" certificates were about to expire. 705 F.3d at 916. Subsequently, the defendant sent a second prerecorded messages to the plaintiff to notify him of changes to the rewards program and to encourage the plaintiff to "go to MyRewardZone.com for details and to update your membership." *Id*. In rejecting the defendant's argument that the calls were not telemarketing, the Ninth Circuit held:

> The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy.

*Id*. at 918.

Similarly, in *Golan v. Veritas Entm't, LLC*, the defendants engaged in a national telemarketing campaign to promote their movie, *Last Ounce of Courage*. 788 F.3d 814, 817 (8th Cir. 2015). They prepared two pre-recorded messages, one that was played if the recipient answered his/her phone, and another which was left as a voicemail if the phone was not answered. *Id*. The plaintiffs did not answer their phones and consequently received the following pre-recorded message on their voicemail: "Liberty. This is a public survey call. We may call back later." *Id*. In granting the defendant's motion to dismiss, the district court concluded that the messages received by the plaintiffs did not contain an advertisement and did not constitute telemarketing. *Id*. at 818. On appeal, the Eighth Circuit reversed, rejecting the defendants' argument that it should "consider only the content of the calls in determining whether they were 'telemarketing.'" *Id*. at 820 (citing *Alleman v. Yellowbook, Inc.*, No. 12-CV-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sept. 6, 2013)).

The Eighth Circuit reasoned that "[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro*, 705 F.3d at 918). The Eighth Circuit further held:

> Here, the context of the calls indicates that they were initiated for the purpose of promoting Last Ounce of Courage….Although the campaign appeared to survey whether recipients had "traditional American values," [the producers of the movie] were "more concerned with getting viewers to see Last Ounce of Courage than gathering information about them.".… Since the calls were initiated and transmitted to the Golans in order to promote Last Ounce of Courage, they qualified as "telemarketing" even though the messages never referenced the film.

*Golan*, 788 F.3d at 820.

In *Flores v. Access Ins. Co.*, the defendant, an auto insurance company, sent the following text message to the plaintiff's cellular telephone: "Your Access Auto Insurance policy cancels

10

01/26/2015. To avoid cancellation, make a payment at [this website]. Reply STOP to Opt-out." No. 2:15-cv-02883-CAS(AGRx), 2017 U.S. Dist. LEXIS 36486, at *2 (C.D. Cal. Mar. 13, 2017). The plaintiff alleged that the defendant violated the TCPA by sending him a text message without his express written consent. *Id*. at *20. The defendant argued that it did not need written consent because its text message did not constitute telemarketing. *Id*. In rejecting the defendant's argument, the court sided with the plaintiff's contention

> that defendant's communications had two purposes: (1) to alert plaintiff to the expiration of his auto insurance policy; and (2) to encourage plaintiff to renew his policy. That is, the communications had both informational and telemarketing purposes because plaintiff was informed about the status of his policy and was encouraged to purchase services from defendant.

*Id*. at *21 (internal citation omitted). Since the defendant failed to obtain express written consent, the court concluded that the plaintiff had adequately stated a claim for violation of the TCPA.

In *Meyer v. Bebe Stores, Inc.*, the defendant sent the following text message to the plaintiff: bebe: "Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg & data rates may apply." No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, at *3 (N.D. Cal. Feb. 2, 2015). The plaintiff alleged that the defendant violated the TCPA because it did not have her express written consent to send her text messages. *Id*. The defendant countered that its message was "merely an informational or administrative message," for which it only needed express consent. *Id*. at *11. The court agreed with the plaintiff, holding that the text message at issue was an impermissible dual purpose message that sought to encourage a future purchase. *Id*. The court was not persuaded by the fact that the message served a dual administrative function (opt-in), holding that express written consent was required because of the marketing component of the message (encouraging future purchases). *Id*. at *12.

11

Lastly, in *Toney v. Quality Res., Inc.*, the plaintiff provided her cellular telephone number to the defendant in connection with the purchase of children's shoes. 75 F. Supp. 3d 727, 731-32 (N.D. Ill. 2014). Subsequently, the defendant called the plaintiff's cellular telephone with an automated dialer to verify the plaintiff's address. *Id*. at 732. During that call, the defendant's agent tried to sell the plaintiff a membership in defendant's "Budget Savers" program. *Id*. The plaintiff filed suit under the TCPA, claiming that the defendant contacted her without her express written consent. *Id*. at 731. The defendant disputed plaintiff's characterization of the call, claiming that it was simply a "confirmation telephone call." *Id*. at 737. The court ultimately agreed with the plaintiff, holding that the call was a dual purpose call that it deemed a "sales call," because defendant, in addition to verifying plaintiff's information, attempted to sell her the "Budget Savers" program. *Id*. at 738.

Here, the undisputed facts support a finding that Defendant's text messages were dual purpose calls like the calls in the cases above. Defendant owns and/or operates a fitness facility and the text messages sent to Plaintiff were meant to indirectly promote that facility. For example, the May 5th text message offered Plaintiff a free fitness session at its gym in exchange for Plaintiff providing Defendant with referral customers. *See* Am. Comp. at ¶ 25. The text message did not simply offer Plaintiff a free fitness session. Instead, it required Plaintiff to provide a referral customer in order to receive a free workout session. In doing so, Defendant was clearly marketing the use of its fitness facility to Plaintiff in exchange for the names of people that Defendant could then sell a membership. In essence, Defendant dangled the "free" use of its fitness clubs while requiring Plaintiff to pay with a referral. To be sure, Defendant was not offering Plaintiff use of its facilities out of the kindness of its heart, it is doing so because offering a "free session" in exchange for a referral customer is more cost-effective means of marketing than using television,

radio or print methods. Additionally, the offer of a "free session" is an industry standard method of marketing fitness facilities to new customers. The expectation is that once the customer tries the facility, they will then purchase a membership.

The August 29th text message is also a marketing attempt, albeit in a subtler form and with the additional promotion of a cancer walk. *See* Am. Comp. at ¶ 25.  In determining the actual purpose of this text message, recognizing that Defendant operates a fitness facility is necessary. As the owner and/or operator of a fitness club, Defendant's most basic marketing pitch is health. It is in this context that sending a text message to Plaintiff which invites Plaintiff to "join [them]" and "[j]oin [their] team" in the fight against cancer, becomes an obvious marketing strategy to pitch Plaintiff on the importance of being healthy, which in turn markets Defendant's fitness facilities. While Defendant claims that the message was not marketing and that it only offered Plaintiff the opportunity to take part in a charitable event, it is worth noting that the hyperlink provided in the text message <u>did not</u> lead to the general cancer walk landing page but instead led to Defendant's own website, where it markets its fitness clubs.

While Defendant attempts to compare the instant case to *Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1096–97 (N.D. Cal. 2015) and *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG BGS, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013), those cases are distinguishable.  Both *Uber* and *Friedman* did not involve marketing calls.  Instead, they involved calls offering employment opportunities. In *Uber*, the text messages attempted to recruit new drivers, while in *Friedman*, the recipients were offered the opportunity to attend a free seminar so they could then sell new products.

Lastly, Defendant cites to *Murphy v. DCI Biologics Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, *4, n.4 (M.D. Fla. Dec. 31, 2013), as support for its position that the

August 29th text message was not marketing, but *Murphy* and the instant case differ substantially. In *Murphy*, the caller was attempting to <u>buy</u> blood from the plaintiff not sell him anything. In the present matter, Defendant's text message did not attempt to buy anything from Plaintiff, but instead attempted market and sell Plaintiff goods and services.  More importantly, *Murphy* involved calls that pre-dated the express written consent rule, and is therefore inapplicable. *See id*. at n.4 ("In 2012, the FCC altered the requisite form of prior express consent…specifying that prior consent to be contacted must be "written"….This revision did not affect Mr. Murphy because he received the text messages before the 2012 rules were implemented.").

The evidence shows that Defendant was engaged in dual purpose telemarketing.  Like the cases discussed above, the fact that Defendant's text may have contained a non-telemarketing component is immaterial.  The marketing component of Defendant's solicitation controls.  Since one component of Defendant's program was marketing, the text messages sent by Defendant to Plaintiff and members of the class are considered telemarketing.  As telemarketing, Defendant was required to obtain express written consent.  As discussed below, Defendant obtain no such consent.

C. **Defendant did not Obtain Plaintiff's Express Written Consent**.

Effective October 16, 2013, a "call that includes or introduces an advertisement or constitutes telemarketing" requires the "the prior express ***written*** consent of the called party."  47 C.F.R. § 64.1200(a)(2) (emphasis supplied). The prior express written consent requires: "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

14

Defendant did not obtain Plaintiff's express written consent before it sent Plaintiff automated telemarketing text messages. Plaintiff never signed a form or document provided by Defendant which contained a clear and conspicuous disclosure regarding contact by an ATDS. Further, Plaintiff did not unambiguously agree to receive text messages promoting Defendant's fitness clubs. Having failed to obtain Plaintiff's express written consent before sending Plaintiff marketing texts, Defendant violated the TCPA and its motion must therefore be denied.

## IV.   CONCLUSION

Defendant violated the TCPA by sending marketing text messages to consumers who had not consented to receive such solicitations. Defendant's Motion to Dismiss should be denied, and Defendant held accountable for its violations.

**WHEREFORE,** Plaintiff Joan Secure, respectfully requests an order denying Defendant's Motion to Dismiss, and for such other and further relief as it deems appropriate.

Dated:  May 7, 2018

                                              Respectfully submitted,

                                              **HIRALDO P.A.**

                                              */s/ Manuel S. Hiraldo*
                                              Manuel S. Hiraldo, Esq.
                                              401 E. Las Olas Boulevard
                                              Suite 1400
                                              Ft. Lauderdale, Florida 33301
                                              Florida Bar No. 030380
                                              mhiraldo@hiraldolaw.com
                                              Telephone: 954.400.4713

                                              *Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713