**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:18-cv-20483-FAM**

JOAN SECURE,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

      Plaintiff,                                           **JURY TRIAL DEMANDED**

v.

ULTIMATE FITNESS GROUP, LLC
d/b/a ORANGETHEORY FITNESS,
a Florida limited liability company,

      Defendant.
_____/

<u>**SECOND AMENDED CLASS ACTION COMPLAINT[1]**</u>

      Plaintiff Joan Secure brings this class action against Defendants, Ultimate Fitness Group,

LLC d/b/a Orangetheory Fitness ("Orange Theory"), and Hart Fitness, Inc. d/b/a Orange Theory

Fitness Cutler Bay ("Orange Theory Cutler Bay") (collectively "Defendants") and alleges as

follows upon personal knowledge as to herself and her own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by her attorneys.

<u>**NATURE OF THE ACTION**</u>

      1.     This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C.

§ 227 *et seq.*, ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

      2.     Orange Theory owns and/or operates and/or acts as a franchisor for a chain of fitness

---

[1] Plaintiff hereby amends her First Amended Class Action Complaint to add the Defendant, Hart
Fitness, Inc. d/b/a Orange Theory Fitness Cutler Bay and to add additional allegations regarding the
relationship between both Defendants and the facts surrounding the transmission of automated text
messages to Plaintiff.

facilities throughout South Florida.

3.     Orange Theory Cutler Bay owns and/or operates a fitness facility in Cutler Bay and is a franchisee of Orange Theory.

4.     Pursuant to its franchise agreement, Orange Theory Cutler Bay is required to promote and market its facility and the Orange Theory brand. The agreement requires Orange Theory Cutler Bay to periodically submit marketing plans for approval to Orange Theory.

5.     At issue here is Orange Theory Cutler Bay's automated text messaging marketing that was approved, consented to, controlled, and/or ratified by Orange Theory. Further Orange Theory knowingly received and retained monetary benefit from Orange Theory Cutler Bay's telemarketing activities.

6.     Defendants' text messaging marketing consists of sending unsolicited text messages to consumers and soliciting them to purchase goods and services from Defendants.

7.     Defendants' caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

8.     Through this action, Plaintiff seeks injunctive relief to halt Defendants illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and members of the Class, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

**JURISDICTION AND VENUE**

9.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendants.  Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among

a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

10.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject them to personal jurisdiction.  Further, Defendants' tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendants have sent the same text message complained of by Plaintiff to other individuals within this judicial district, subjecting Defendants to jurisdiction here.

## PARTIES

11.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

12.     Orange Theory is a Florida limited liability company with its principal place of business located at 6000 Broken Sound Parkway NW, Boca Raton, FL 33487.  Orange Theory directs, markets, and provides business activities throughout the State of Florida.

13.     Orange Theory Cutler Bay is a Florida corporation with its principal place of business located at 18455 S. Dixie Hwy, Cutler Bay, FL 33157. Orange Theory Cutler Bay directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

14.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

15.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment

that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

16.     The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

17.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

19.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R.

1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).   In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

23.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12));  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

24.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*.  *Id.*

25.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

26.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

27.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

28.    Like all Congressional tort actions, the TCPA incorporates vicarious liability principles, including actual and apparent authority, and ratification. The FCC has made this point explicitly, recently stating that a seller "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, ¶ 24 (2013) (hereinafter "*2013 Dish Network Order*").

29.    As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.

*Id.* ¶ 37.

30.     The *2013 Dish Network Order* provides that a "telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's [auto-dialer] violations." *Id.* ¶ 46. This arises when the seller authorizes the telemarketer "to use the seller's trade name, trademark and service mark." *Id*.

31.     Lastly, with respect to standing, as recently held by the United States Court of Appeals for the Ninth Circuit:

> Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified."

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

32.     Similarly, the United States Court of Appeals for the Second Circuit recently held that the receipt of a telemarketing or unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be shown by one-minute occupation of fax machine)).

## FACTS

33.    Defendants, acting within the scope of their contractual relationship, embarked upon an intrusive telemarketing campaign to promote their fitness business.

34.    Specifically, in 2017, Defendants', using an automated text-messaging platform, caused various text messages to be transmitted to Plaintiff's cellular telephone number ending in 2907 ("2907 Number"), including the following text messages:



35.    Defendants' text messages constitute advertising/telemarketing because the purpose was the marketing of Defendants' fitness facilities and their goods and services.

36.    Specifically, the May 5, 2017 text message offers Plaintiff a free fitness session at its

gym in exchange for Plaintiff providing Defendants with referral customers. The text message does not simply offer Plaintiff a free fitness session. Instead it requires Plaintiff to provide a referral customer in order to receive a free workout session. In doing so, Defendants are clearly marketing use of their fitness facility to Plaintiff in exchange for the names of people that Defendants can then sell their goods and products to. In essence, Defendants dangle the "free" use of its primary business product while requiring Plaintiff to pay for those goods and services with a referral.

37.     Indeed, the offer of "free sessions" is a very common method of marketing fitness facilities to potential customers. The expectation is that once the customer tries the facility once, they will be more inclined to purchase a membership or other goods and services from the fitness facility.

38.     The August 29, 2017 text message also constitutes dual purpose telemarketing in that it not only promotes a cancer walk but it also promotes Defendants fitness facility. As the owner and/or operators of a fitness club and fitness business, Defendants' most basic marketing pitch is health. It is in this context that sending a text message to Plaintiff which invites Plaintiff to "join [them]" and "[j]oin [their] team" in the fight against cancer, becomes an obvious marketing strategy to pitch Plaintiff on the importance of being healthy, which in turn markets Defendants' fitness facilities and fitness business.

39.      Indeed, the "FCC contemplates that savvy companies may devise a multilayered approach in attempting to avoid violating the TCPA, and acknowledges that an otherwise benign fax may violate the TCPA, if it ultimately leads to the promotion of goods or services." *Comp. Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239 (S.D. Fla. 2017) (Bloom, J.).

40.     These text messages originated from telephone number 305-570-2940, a number which is owned and operated by Defendants, and is answered by a prerecorded message instructing the caller to contact 305-234-1141, another number owned and operated by Defendants.

41.     The number used by Defendants (305-570-2940) is known as a "long code," a

standard 10-digit phone number that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

42.     Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

43.      Plaintiff received the subject text messages within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district.   Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

44.     At no point in time did Plaintiff provide Defendants with her express written consent to be contacted by text messages using an ATDS.

45.     Plaintiff is the subscriber and user of the 2907 Number.

46.     The impersonal and generic nature of Defendants' text messages establishes that Defendants utilized an ATDS to transmit the messages.

47.     Specifically, the text messages are impersonal as they never state the name of their intended recipient or provide any other specific information which would establish that the text messages were drafted with a specific intended recipient in mind. In fact, the May 5th text messages requests Plaintiff to respond by providing her name and phone number, establishing that the message was not personalized, but rather automated.

48.     Additionally, the May 5, 2017 text message states "To stop these messages, reply STOP". The inclusion of automated opt-out instructions in the text message is another sign that

Defendants used an ATDS to transmit the messages.

49.     Defendants' utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendants has the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

50.     Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text message also inconvenienced Plaintiff and caused disruption to her daily life.  *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

51.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

52.     Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number.**

53.     Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

#### NUMEROSITY

54.     Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

55.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

#### COMMON QUESTIONS OF LAW AND FACT

56.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

> (2) Whether Defendants can meet its burden of showing that it obtained prior express written consent to make such calls;

> (3) Whether Defendants' conduct was knowing and willful;

> (4) Whether Defendants are liable for damages, and the amount of such damages; and

> (5) Whether Defendants should be enjoined from such conduct in the future.

57.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of

being efficiently adjudicated and administered in this case.

### TYPICALITY

58.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

59.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

61.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

62.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

63.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

64.     The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the **capacity** – (A) to store **or** produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1) (emphasis added).

65.     Defendants – or third parties directed by Defendants – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

66.     These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

67.     Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

68.     All Defendants' are directly, jointly, or vicariously liable for each such violation of the TCPA.

69.     As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

**WHEREFORE**, Plaintiff, Joan Secure, on behalf of herself and the other members of the Class, prays for the following relief:

a.     A declaration that Defendants practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.     A declaration that Defendants violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.     An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.     An award of actual, statutory damages, and/or trebled statutory damages; and

e.     Such further and other relief the Court deems reasonable and just.

## <u>JURY DEMAND</u>

Plaintiff and Class members hereby demand a trial by jury.

Date: July 9, 2018

Respectfully submitted,

**HIRALDO P.A.**
/s/ Manuel S. Hiraldo
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
/s/ Scott Edelsberg
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
Jeff Ostrow, Esq.
Florida Bar No. 121452
ostrow@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*Counsel for Plaintiff and the Classes*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 9, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: <u>/s/ Manuel S. Hiraldo</u>
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com