UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| JOAN SECURE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ULTIMATE FITNESS GROUP, LLC d/b/a ORANGETHEORY FITNESS, a Florida limited liability company,<br><br>Defendant. | Case No. 1:18-cv-20483-FAM |

**DEFENDANT HART FITNESS, INC.,
D/B/A ORANGETHEORY FITNESS CUTLER BAY'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
AND MOTION TO STRIKE CLASS ALLEGATIONS**

Defendant Hart Fitness, Inc. d/b/a Orangetheory Fitness Cutler Bay ("Hart Fitness"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss Plaintiff JOAN SECURE'S ("Plaintiff") Second Amended Class Action Complaint ("Complaint" or "SAC"), as follows:

**I.      INTRODUCTION**

Plaintiff brings the instant putative class action against Orangetheory and one of its independently owned and operated franchisees Hart Fitness Inc. d/b/a Orange Theory Fitness Cutler Bay ("Hart Fitness," collectively with Orangetheory, "Defendants") based on the allegation that she received two text messages sent through an automatic telephone dialing system ("ATDS") without prior express written consent in violation of the Telephone Consumer

1

Protection Act ("TCPA"), 47 U.S.C. § 227. Following Orangetheory's first—and second—motions to dismiss, Plaintiff elected again to amend her Complaint in an effort to cure her Complaints' legal deficiencies and to add Hart Fitness as a Defendant. Plaintiff's third attempt to plead viable legal claims, however, contains no new facts and instead offers only conclusory and unsupported assertions. It fails to state a TCPA claim against Orangetheory or Hart Fitness. In addition, Plaintiff fails to differentiate between Orangetheory and Hart Fitness. Accordingly, the Plaintiff's Complaint against Orangetheory must be dismissed

First, Plaintiff does not adequately allege that the at-issue text messages were sent using an ATDS. Instead of facts, Plaintiff offers only the conclusory assertion that an ATDS was used which is insufficient, particularly in light of the facts contained in the Complaint that indicate no automated system was used. The two text messages Plaintiff allegedly received, as described in the SAC, do not exhibit the signs of being transmitted through an ATDS and instead contain hallmarks of transmission via regular human interaction: The text messages were sent from a local telephone number rather than an SMS short code, were sent three months apart rather than repeatedly *en masse*, and gave no automated response to Plaintiff's request that the messages stop.

Second, Plaintiff fails to adequately plead the alleged text messages constitute advertising, meaning that even if an ATDS was used, no written consent was required. The first text message Plaintiff received asked for referrals, while the second informed Plaintiff about a charity walk to fight breast cancer. Accordingly, the text messages fall outside the definition of advertising under the TCPA and do not require written consent. Because Plaintiff never alleges that she did not provide a non-written form of consent, she has not pled all the necessary elements of her claim.

2

Third, even if the SAC adequately alleged use of an ATDS or that the at-issue text messages constitute advertising, it fails to state a cause of action as against Hart Fitness, Inc. because it does not differentiate between the two Defendants.

Fourth, Hart Fitness, using the allegations of the SAC, does not operate or market nationally and, therefore, Plaintiff's indiscriminate attempt to name Hart Fitness in a nationwide class action must be stricken.

For each of these independent reasons, Plaintiff's Complaint is legally infirm, warranting dismissal.

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff, who was a member at the Hart Fitness studio, alleges Defendants "caused" the following text messages to be transmitted to her cellular telephone number:



(SAC, ¶ 34).

Plaintiff further alleges that the "text messages originated from telephone number 305-570-2940, a number which is owned and operated by Defendants, and is answered by a prerecorded message instructing the caller to contact 305-234-1141, another number owned and operated by Defendants." (SAC, ¶ 40). Plaintiff then argues that Defendants "utilized an ATDS to transmit the messages." (SAC, ¶ 46). Plaintiff, however, admits in the SAC that the text messages here were sent from a normal telephone number, not a short code. (SAC, ¶ 40). Plaintiff also alleges that "[a]t no point in time did Plaintiff provide Defendants with her express written consent to be contacted by text messages using an ATDS." (SAC, ¶ 44). Tellingly, Plaintiff offers no further explanation, nor does she claim that she never provided her telephone number to Orangetheory or Hart Fitness.

Based upon these meager allegations, Plaintiff brings a single count for violation of the TCPA and seeks to represent the following class:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number.

(SAC, ¶¶ 52, 62–69).

### III.  LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to state a cognizable legal theory or allege enough plausible facts to support the claim stated. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the "complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

(internal quotations omitted). "[T]he pleading standard [of] Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true." *Leonard v. Zwicker & Associates, P.C.*, No. 16-CV-14326, 2016 WL 7388645, *2 (S.D. Fla. Dec. 14, 2016). "However, pleadings that 'are no more than conclusions, are not entitled to the assumption of truth.' [Legal conclusions] must be supported by factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Moreover, a court's "duty to accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

### IV. THE COURT SHOULD DISMISS THE SAC BECAUSE PLAINTIFF FAILS TO STATE A CLAIM.

The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A). Therefore, to state a claim under the TCPA, a plaintiff must allege that (1) the defendant made a call to a cell phone, (2) by the use of an automatic dialing system or an artificial or recorded voice, and (3) without prior express consent of the called party. *See Cummings v. Rushmore Loan Management Service*, 2017 WL 4005455, *2 (M.D. Fla. Sep. 12, 2017). Text messages are treated as calls

under the TCPA. *See Murphy v. DCI Biologics Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, *4, n.4 (M.D. Fla. Dec. 31, 2013).

Here, Plaintiff's SAC fails for three independent reasons. First, Plaintiff does not allege enough facts to plausibly plead that an ATDS was used. Second, Plaintiff does not sufficiently allege that the text messages constituted advertising, requiring written consent. Third, Plaintiff does not adequately allege facts necessary to distinguish between the Defendants. Accordingly, the Court should dismiss Plaintiff's SAC.

### A. Plaintiff Fails To Allege Facts Establishing That The Texts Were Sent Using An ATDS.

If a text message is not sent via an ATDS, it falls outside the scope of the TCPA altogether. *See* 47 U.S.C. § 227(b)(1); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014) ("If Defendant's system is not an ATDS, [t]he TCPA does not apply[.]"). The TCPA expressly defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In 2015, the FCC attempted to broaden the definition of ATDS, but the FCC's Order was overturned. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ("*ACA International*").[1] After the *ACA International* decision, courts should "not stray from the statute's language," which requires that the equipment

---

[1] The D.C. Circuit's ACA International ruling is binding precedent. The Hobbs Act directs review of FCC orders to a single court of appeals. See 28 U.S.C. §§ 2342–44. "The decision of that court is then binding on all circuits." True Health Chiropractic, Inc. v. McKesson Corp., --- F.3d ---, 2018 WL 3431723, *4 (9th Cir. July, 17, 2018) (citing Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir. 2008)); see also Marshall v. CBE Group, Inc., 2018 WL 1567852, *5 n.4 (D. Nev. Mar. 30, 2018) ("The Court rejects Plaintiff's argument that ACA Int'l does not bind this Court. The D.C. Circuit's decision is binding on this Court because appellate courts have exclusive jurisdiction to determine the validity of all FCC final orders and the Judicial Panel on Multidistrict Litigation has consolidated the various appeals in that case in the D.C. Circuit.").

have the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. *Marshall v. CBE Group, Inc.*, 2018 WL 1567852, *5 (D. Nev. Mar. 30, 2018).

Since *ACA International* was decided, both the Second and Third Circuits have applied the D.C. Circuit's ruling and held that plaintiffs can no longer rely on the broad definition of an ATDS set forth in the FCC's 2015 Order. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) ("In light of the D.C. Circuit's holding [*ACA International*], we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. [Plaintiff] can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether . . . the Email SMS Service had the present capacity to function as autodialer."); *King v. Time Warner Cable Inc.*, --- F.3d ---, 2018 WL 3188716, at *3 , *7 (2d Cir. June 29, 2018) (noting that the D.C. Circuit's holding in *ACA International* "invalidated [the FCC's 2015] Order and thereby removed any deference we might owe . . . it," and ruling that "the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software").[2]

To allege adequately that calls were made using an ATDS, a complaint must do more than parrot the statutory language. Plaintiff's "formulaic recitation of the elements" of his claim

---

[2] Notably, the FCC orders prior to the 2015 Order dealt with the capacity of predictive dialers not with text messages. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 132 (2003) ("2003 Order") and *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008) ("2008 Order"). The better view is that *ACA International* invalidated these prior orders as well as the 2015 Order. However, even if it did not, since "a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls" (2003 Order at 14091), and there are no agents handling telephone calls when text messages are sent, predictive dialers and any orders about predictive dialers are not relevant to text messages.

will not do. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. When analyzing whether a plaintiff has sufficiently alleged the use of an ATDS, courts examine the facts and circumstances of the alleged calls to determine whether they create an "inference supporting the allegation that calls were made using an automatic dialing system[.]" *Hunter v. Diversified Consultants, Inc.*, No. 8:14-CV-2198-T-30, 2014 WL 6747153, *1 (M.D. Fla. Nov. 26, 2014) (dismissing TCPA complaint because it lacked adequate factual support). Merely setting forth the statutory language of the TCPA is a "copy and paste job [] not entitled to the assumption of truth." *Walker v. Commercial Industries Service Company, Inc.*, No. 13-61096-CIV, 2013 WL 12043500, *2 (S.D. Fla. Oct. 1, 2013).

Here, the only allegations Plaintiff provides that support the inference that an ATDS was used are conclusory assertions lifted directly from the TCPA's statutory text. (*Compare* SAC ¶¶ 49, 65) ("The systems utilized by Defendants has [sic] the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention."), *with* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity-- to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.").

Beyond these threadbare recitals of the statutory text, Plaintiff offers only two additional facts regarding the text messages, both of which rebut Plaintiff's claims and support the inference that no ATDS was used: (1) the Complaint states the dates and content of the text messages (SAC, ¶ 34); and (2) it lists the phone number from which the text messages were sent. (SAC, ¶

40).[3]  These additional pieces of information contained in the SAC indicate that the text messages were sent through normal human interaction and that an ATDS was not used.

First, Plaintiff sets forth the dates and verbatim content of the text messages in Paragraph 34 of the SAC. The first text message, which asked Plaintiff for referrals, was sent on May 5, 2017. The second text message, informing Plaintiff about a breast cancer charity walk, was sent on August 29, 2017.

To determine whether a plaintiff has sufficiently pleaded the use of an ATDS, courts examine the content of the text messages at issue and whether they are identical, indicating the use of an ATDS, or have differences, making it appear that they were not sent by an ATDS. *See, e.g.*, *Friedman v. Massage Envy Franchising*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, *2 (S.D. Cal. Jun. 13, 2013) (dismissing TCPA complaint because plaintiffs failed to adequately allege use of an ATDS and stating "The text messages are generic and impersonal, as Plaintiffs assert, but that is not enough to make the claims plausible . . . The text messages that the Plaintiffs present are similar in content, but differ enough to make it appear as if an ATDS was not utilized."); *Murphy*, 2013 WL 6865772, at *2–4 (plaintiff alleged that "identical text messages were also sent out *en masse* to other donors using automatic telephone dialing systems" so plaintiff stated TCPA claim); *Duguid v. Facebook, Inc.*, 2016 WL 1169365 *5 (N.D. Cal. Mar. 24, 2016) (finding that content of messages indicated that they were targeted and not sent *en masse* by an ATDS); *Weisberg v. Stripe, Inc.*, 2016 WL 3971296, *4 (N.D. Cal. July 25, 2016) (dismissing complaint because content of text messages suggested individual targeting rather than use of ATDS).

---

[3] As discussed further below, the SAC offers assertions about what these facts mean, but no additional facts to support these conclusory statements.

Here, the dates and content of the messages indicate they were not sent using ATDS. The first text message sent to Plaintiff on May 5, 2017, asked Plaintiff to refer other persons to Orangetheory. (SAC, ¶ 34). The second text message, sent more than three months later, on August 29, 2017, informed Plaintiff about a charity breast cancer walk. *Id.* Several aspects of these messages indicate no ATDS was used. First, Plaintiff received only two messages, more than three months apart, indicating the absence of an automated program that sent out messages at the same time every week or more. Second, the messages differed. Although somewhat impersonal,[4] the two messages were about totally different topics and did not follow the same format. For example, the first message stated that Plaintiff could respond if she did not want to receive further text messages, but the second message contained no such information, demonstrating the messages were not sent through a system that generated boilerplate instructions. Third and finally, when Plaintiff replied "Stop" in response to the second message, there was no telltale automated acknowledgement of Plaintiff's reply, further indicating no ATDS was used.

The second fact Plaintiff provides likewise rebuts her conclusory assertion that an ATDS was utilized. In Paragraph 40 of the SAC, Plaintiff alleges that the texts "originated from telephone number 305-570-2940, a number which is owned and operated by Defendants, and is answered by a prerecorded message instructing the caller to contact 305-234-1141, another number owned and operated by Defendants." Plaintiff thus admits that the text message did not originate from an SMS short code—*i.e.*, a series of five or six numbers that do not resemble a

---

[4] Plaintiff asserts the messages are impersonal because "the May 5 text message requests Plaintiff to respond by providing her name and phone number, establishing that the message was not personalized, but rather automated." (SAC, ¶ 47). Plaintiff blatantly mischaracterizes the message, which is set forth verbatim in the SAC. The message actually asks for referrals and states "[j]ust reply to this message with name(s) and phone number(s)" of the referrals—nowhere does it request Plaintiff to respond with her name and phone number. (SAC, ¶ 34).

traditional ten-digit telephone number—which are used by automated systems to send text messages.  Courts find that when a text message comes from an SMS short code, it is an indication the messages were sent by an ATDS.  *See, e.g.*, *Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593, *4 (S.D. Fla. Nov. 10, 2015) ("text messages . . . were sent 'en mass' from a short code"); *Duguid*, 2016 WL 1169365, *1 (noting that "messages were sent from an SMS short code, 326-65 ('FBOOK')").  Here, however, the text messages came from an actual telephone number, not an SMS short code, meaning Plaintiff's second additional allegation about the facts and circumstances of the messages supports the inference that no ATDS was used.

In an attempt to evade the fact that the text messages were sent from a standard telephone number, Plaintiff, without support, claims the normal ten-digit telephone number used was something called a "long code"—a term Plaintiff apparently invents to make the number seem similar to the short codes discussed in the cases cited above.  (SAC, ¶ 41).  Despite offering a description of what a "long code" supposedly is, Plaintiff offers no facts suggesting that the standard telephone number used was indeed such a "long-code," indicating the ten-digit number was exactly what it appears—a standard telephone number.

Plaintiff fails to allege in her Complaint facts creating a plausible inference that Hart Fitness used an ATDS to send text messages.  Indeed, Plaintiff's alleged facts, including the over three-month gap between the two differing texts, the absence of an automated response to Plaintiff's "Stop" request, and the phone number used to send the texts, create the opposite inference: that the texts were *not* sent using an ATDS.  Plaintiff accordingly fails to state a claim for violation of the TCPA, and the Court should dismiss the SAC.

   **B.**  **Plaintiff Fails To Allege That The Calls Were Made Without the Requisite Consent.**

Plaintiff alleges that "At no point in time did Plaintiff provide Defendants with her express written consent to be contacted by text messages using an ATDS." (SAC, ¶ 44). Plaintiff, however, fails to make any allegation, even in conclusory form, that she did not provide her telephone number to Orangetheory or Hart Fitness. Plaintiff's omission on this point is salient.

Prior express *written* consent is required only if a text message constitutes advertising or telemarketing, meaning non-written forms of consent are permissible if the message does not fall within these definitions. *See* 47 C.F.R. § 64.1200(a)(2). Accordingly, if the text messages do not constitute advertising, written consent is not required, and Plaintiff, by failing to allege that she never provided her telephone number to Orangetheory, has failed to state a viable TCPA claim.[5]

"The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Neither of the at-issue text messages constitutes advertising or telemarketing.

The first text asked Plaintiff to provide referrals to Orangetheory. (SAC, ¶ 34). The message did not attempt to sell Plaintiff anything or encourage Plaintiff to purchase of goods or services, and therefore falls outside the advertising and telemarketing definitions. *See, e.g.*,

---

[5] If the text message does not constitute advertising or telemarketing, only prior express consent if required. *See* 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1). The provision of a telephone number to a person provides prior express consent to be called. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, (Oct. 16, 1992) ("persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *Murphy* 2013 WL 6865772, at *8 ("The 1992 FCC Order is clear that providing a number constitutes express consent to be auto-dialed under the TCPA."); *Van Patten v. Vertical Fitness Group, LLC*, 22 F.Supp.2d 1069, 1078 (S.D. Cal. 2014) (holding that gym member consented to receiving text messages when he provided his telephone number upon joining gym).

*Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1096–97 (N.D. Cal. 2015) (holding that text messages aimed at recruiting individuals are not advertising, "even if Uber's ability to successfully recruit drivers is related to its commercial interest," and collecting cases holding the same); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG BGS, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) (holding messages "inviting Plaintiff to attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them" not telemarketing because "Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transactions with Defendant to purchase its goods").[6]

The second text message informed Plaintiff about a "Making Strides Against Breast Cancer Walk" and asked her to join the walk or donate. (SAC, ¶ 34). Likewise, this text was not attempting to sell anything to Plaintiff or encourage her to purchase goods or services. Plaintiff claims otherwise by misconstruing the message and claiming it made a broad request for Plaintiff to "'[j]oin [Defendant's] team.'" (SAC, ¶ 38). However, the message in no way implied Plaintiff should join Orangetheory in a commercial sense and only offered Plaintiff the opportunity to take part in a charity event in multiple ways—either by attending or donating.[7]

---

[6] The SAC claims this recruiting message was marketing goods or services because it offered free sessions. (SAC, ¶¶ 36–37). Not so. *Friedman* specifically addressed this issue, and, applying the FCC's broadcaster regulations to the TCPA context, stated "The 2005 Rules and Regulations distinguish between messages that encourage consumers to listen to free broadcasts and messages that encourage consumers to listen to programming for which they must pay. The latter constitutes unsolicited advertisements, whereas the former does not." *Friedman*, 2013 WL 1629084, at *4 (internal citations omitted).

[7] Plaintiff also makes the far-fetched assertion that because the text message referenced a charity walk for cancer it implicated health and thereby promoted Orangetheory's and/or Hart Fitness' business and was advertising. (SAC ¶ 38). Because there could be some tangential link between cancer and health and a fitness studio does not make a text message about a charity walk advertising. Under this logic, practically any text message about charity event could be found to be advertising through the drawing of supposed connections to a business. The text message here contained no promotion of goods or services and simply invited participation in a charity event; it was not advertising. 10 Plaintiff cites *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239 (S.D. Fla. 2017), but *Comprehensive Health Care* is not on point. *Comprehensive Health Care* dealt with faxes aimed at getting medical professionals to submit information so they could be spammed with marketing materials, not text messages providing information about charity events. *See Comprehensive Health Care*, 232 F. Supp. 3d at 1242.

The message accordingly is not advertising or telemarketing. *See Murphy*, 2013 WL 6865772, at *10 (holding messages encouraging blood donation not telemarketing "[b]ecause neither of the messages in this case encouraged Murphy to purchase, rent, or invest in anything").[10]

Because neither text message constitutes advertising or telemarketing, prior express *written* consent was not required to send the messages. Plaintiff fails to allege that she did not provide her cellular telephone number to Defendants, meaning Plaintiff has not alleged facts showing the texts were sent without prior express consent. Plaintiff thus does not plead facts showing the lack of the required consent and the Court should dismiss her Complaint.

### C. Plaintiff Fails To Allege An Agency Relationship Between Defendants Or Specify Acts Carried Out By Either Defendant.

Even if the Complaint adequately alleged use of an ATDS or the requisite lack of consent, it fails to state a cause of action as against Hart Fitness because it does not differentiate allegations between the two Defendants. Rather, the Complaint improperly asserts various central factual allegations as against "Defendants," generally.

With respect to the central allegation of which party sent the text messages at the heart of the litigation, the Complaint alleges that "in 2017, Defendants, using an automated text messaging platform, caused various text messages to be transmitted to Plaintiff's cellular telephone number." (SAC, ¶ 34, emphasis supplied). Likewise, with respect to ownership and control of the phone number from which the text messages allegedly originated, the Complaint fails to identify the party against which the allegation is leveled: "These text messages originated from telephone number 305-570-2940, a number which is owned and operated by Defendants." (SAC, ¶ 40, emphasis supplied). The Complaint further incorporates the ambiguous allegations in alleging broader class conduct: "The number used by Defendants (305-570-2940) is known as a "long

14

code," . . . that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual." (SAC, ¶ 49).[8]

While group allegations in a complaint may be sufficient in certain circumstances, the practice "runs afoul of the applicable pleading standard where it denies a defendant notice of the specific claims against it." *1-800-411-I.P. Holdings, LLC v. Georgia Injury Centers, LLC*, 71 F. Supp. 3d 1325, 1330 (S.D. Fla. 2014). Group allegations fail to give notice when, among other things, they leave "unclear just who is alleged to have committed which acts." *Id.* Generalized pleading is all the more problematic where, as here, "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (remanding with instructions to require repleading of complaint that was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged."); *cf. Kadosh v. Sable Resorts, Inc.*, CV 13-61011-CIV, 2014 WL 12600800, at *4 (S.D. Fla. Jan. 29, 2014) (denying motion to dismiss and holding "[u]nlike the complaint in *Magluta*, [plaintiff's] Complaint contains allegations as to each Defendant for acts that, as her employer, they can each be responsible for.").

---

[8] The ambiguity arising from Plaintiff's failure to differentiate allegations as between Defendants is present throughout the Complaint and similarly infects the proposed class definition, creating uncertainty by seeking certification of a class of individuals who "were sent a text message using the same type of equipment used to text message Plaintiff, from Defendants or anyone on Defendants' behalf." (SAC at ¶52, emphasis supplied). Does the class definition seek to cover individuals who received a text message from Hart Fitness only? From Orangetheory? From Orangetheory, using the same type of equipment used by Hart Fitness?

Here, Plaintiff purports to attribute conduct—the sending of a text message and ownership of the originating phone number—carried out by, at most, one of the Defendants to both, leaving uncertain which is being accused of what and whether a cognizable claim is set forth as to either. Specifically, Plaintiff's generalized use of "Defendants" prevents Hart Fitness and Orangetheory from determining whether the Complaint alleges that Hart Fitness sent the text messages, Orangetheory sent the text messages, or each Defendant sent one text message each. The Complaint's generalized allegations also prevent the Defendants from determining whether ownership of the originating phone number is alleged as to Hart Fitness or Orangetheory. Because the factual sufficiency of the SAC rises or falls on allegations as to the sender of the texts, the equipment used, and the circumstances of the alleged transmission, these ambiguities are not mere procedural infirmities but preclude a finding that Plaintiff has set forth the elements of her claim.

By failing to delineate its allegations against Hart Fitness from those leveled against Orangetheory, or set forth facts to establish an agency relationship between the two, the SAC fails to allege facts sufficient to state a cause of action against either and should be dismissed.

## V.     The Court Should Dismiss Or Strike the Class Allegations Against Hart Fitness

In addition to conflating the conduct of Orangetheory and Hart Fitness, the Plaintiffs attempt to allege a putative nationwide class against Hart Fitness, while acknowledging that Hart Fitness only operates within the State of Florida. The SAC states:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number.**

However, the SAC also states "[Hart Fitness] is a Florida corporation with its principal place of business located at 18455 S. Dixie Hwy, Cutler Bay, FL 33157. [Hart Fitness] directs, markets, and provides business activities throughout the State of Florida." SAC ¶ 13. Based on the Plaintiff's own allegations, Hart Fitness has not engaged in nationwide conduct subjecting it to nationwide class action liability. Moreover, the description of the alleged class itself implies that Hart Fitness was one franchisee in one geographic area using technology that was provided by Orangetheory.

Courts in this District have acknowledged that "[d]ismissal [of class action allegations] at this stage is an extreme remedy appropriate only where a defendant demonstrates 'from the face of [the] complaint that it will be impossible to certify the classes alleged by the plaintiff[ ] regardless of the facts the plaintiff[ ] may be able to prove.'" *Oginski v. Paragon Properties of Costa Rica, LLC*, No. 10-21720-CIV, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011).

Here, the allegations of the SAC relating to Hart Fitness' marketing activities clearly contradict the class allegations seeking to hold Hart Fitness liable for damages to plaintiffs nationwide. Therefore, the alleged putative class allegations, including the description of the putative class, should be stricken at this time.

## V. CONCLUSION

For the Foregoing reasons, Hart Fitness respectfully requests that the Court dismiss the SAC and strike the Plaintiff's class allegations.

Dated:   August 15, 2018               Respectfully submitted,

                                                                        **FASANO LAW FIRM, PLLC**
                                                                        1000 Brickell Avenue
                                                                        Suite 920
                                                                        Miami, Florida 33131

Tel: 530-5239

By:    /s/ *Michael C. Fasano*
       MICHAEL C. FASANO
       Florida Bar No. 98498
       mfasano@fasanolawfirm.com

*Counsel for Defendant Hart Fitness, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to the following counsel of record:

HIRALDO, P.A.
Manuel S. Hiraldo
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL  33301
Phone:  954-400-4713
Email:  mhiraldo@hiraldolaw.com
Attorney for Plaintiff

KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT
Scott A. Edelsberg, Esq.
edelsberg@kolawyers.com
Jeff Ostrow, Esq.
ostrow@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
Attorney for Plaintiff

DLA PIPER (US) LLP
Fredrick H.L. McClure
J. Trumon Phillips

3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone: 813-229-2111
Fax: 813-229-1447
Email: fredrick.mcclure@dlapiper.com
trumon.phillips@dlapiper.com
sheila.hall@dlapiper.com
Attorneys for Defendant Ultimate Fitness Group, LLC d/b/a
Orangetheory Fitness

                                          /s/*Michael C. Fasano*_____
                                          Michael C. Fasano